# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6607 | **DATE** | 2/10/2004 |
| **CASE TITLE** | Continental Casualty Corp. vs. American National Ins. Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings [4-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings [4-1]. Defendant's Motion to Dismiss is granted and this action is dismissed. See attached.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 2-13-04 date docketed | |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | | docketing deputy initials | 18 |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY CORP., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02 C 6607 |
| ) | Honorable Charles R. Norgle |
| ) | |
| AMERICAN NATIONAL INS. CO., ) | |
| Defendant. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

## I. INTRODUCTION

Before the court is Defendant's Motion to Dismiss, or in the Alternative, to Stay Proceedings [4-1]. For the following reasons, the Motion to Dismiss is granted.

## II. BACKGROUND

Plaintiff Continental Casualty Corp. ("CCC") and Defendant American National Insurance Co. ("ANICO") were members of a reinsurance pool, collectively referred to as Associated Accident and Health Reinsurance Underwriters ("AAHRU"). AAHRU was managed by IOA Re, Inc. ("IOA Re"), pursuant to separate contracts (the "Participation Agreement[s]") entered into between IOA Re and each individual AAHRU member. Each individual AAHRU member's Participation Agreement was identical or substantially identical to those of other AAHRU members. Under the Participation Agreements, IOA Re was authorized to enter into reinsurance contracts on behalf of members of the AAHRU pool.

On July 5, 2000, CCC sent a letter to IOA Re indicating that CCC was terminating its Participation Agreement effective December 31, 2000. Subsequent letters to the same effect were



also sent on July 21 and November 29, 2000. By another letter dated August 22, 2000, CCC informed IOA Re that it was revoking the authority of IOA Re to enter into multiple-year contracts, to extend policy periods, or to back-date effective dates of reinsurance policies.

It is not disputed that there was a sophisticated and long-standing relationship between the parties in the reinsurance pool, and that there was routine commercial communication. CCC does not claim that it also notified other members of the AAHRU pool of the attempted revocation of IOA Re's authority. CCC does not allege that IOA Re acknowledged receipt of such notice or that any other members of the AAHRU pool communicated in any way about the revocation of an agency relationship.

On April 20, 2001, IOA Re and ANICO executed a Quota Share Accident Retrocession Contract ("Quota Share Contract") pursuant to which AAHRU members indemnified ANICO, according to varying shares per member, on certain of ANICO's reinsurance business. ANICO's reinsurance concerned certain risks covered in the World Trade Center attacks of September 11, 2001. CCC alleges that it learned of the Quota Share Contract in mid-September 2001, in the wake of the September 11th terrorist tragedies.

On September 17, 2002, CCC filed suit against ANICO. CCC's Complaint seeks a declaratory judgment that it is not bound by, and owes no duty under, the Quota Share Contract, based on the fact that IOA Re lacked authority to enter into the Quota Share Contract on CCC's behalf.

ANICO has filed the instant Motion to Dismiss, or in the Alternative, to Stay Proceedings. In that Motion, ANICO makes the following arguments: (1) the Quota Share Contract contains an arbitration clause, thus arbitration is required under the Federal Arbitration Act ("FAA"), and CCC's

Complaint should be dismissed; (2) the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) based on improper venue; and (3) the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) based on failure to join IOA Re, an indispensable party.

CCC has responded arguing that under <u>Sphere-Drake Ins. Ltd. v. All Amer. Ins. Co.</u>, 256 F.3d 587 (7th Cir. 2001), the issue of whether an agreement to arbitrate was formed - whether IOA Re had authority to bind CCC to the Quota Share Contract - must be preliminarily determined by the court.

From this point ANICO's briefs take on a discordant quality, and have resulted in a total of six briefs having been filed between the parties. In order to simplify the confusion created by these pleadings, the court will not address any arguments other than the issue of whether this matter should be arbitrated.

ANICO filed a reply arguing that arbitration is required based on the Participation Agreement executed by IOA Re and CCC, and has attached a copy of that Participation Agreement to its Reply.[1] As an additional argument, relying on <u>Reinsurance Co. of Amer. v. Amer. Cent. Ins. Co.</u>, 621 F. Supp. 516, 518 (C.D. Ill 1985), ANICO argues that IOA Re had apparent authority to bind CCC to the Quota Share Contract, and thus arbitration is required.

CCC was granted leave to file a sur-reply, and argues that the Participation Agreement has nothing to do with its Complaint in this matter. CCC gives short shrift to ANICO's apparent authority argument, stating only that IOA Re's apparent authority is a fact issue requiring discovery

---

[1] Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. See <u>Venture Assoc. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993); see also Federal Rule of Civil Procedure 10(c).

and a trial according to Sphere-Drake.

ANICO filed a rejoinder, reiterating the arguments raised in its Reply. CCC filed a sur-rejoinder, pointing out that ANICO has avoided discussing Sphere-Drake throughout its pleadings. The court will now decide the issue.

### III. DISCUSSION

*Discussion of Retrocessional Agreements*

Reinsurance is a contract pursuant to which one insurer transfers or "cedes" to another insurer all or a portion of the risk it has assumed under one or more separate insurance policies. See Couch on Insurance 3d § 9:1 at 9-3 (2003). Conceptually, reinsurance is insurance for insurers, thereby allowing insurers to spread their risks. See id. § 9:1 at 9-4. The original insurer that is transferring its risks is known as the "reinsured," and the insurer that is accepting those risks is known as the "reinsurer." See id. § 9:2 at 9-6. In turn, a reinsurer may transfer its reinsured risks to yet another insurer by what are referred to as "retrocessional agreements." Id. The reinsurer transferring its risks is known as a "retrocedent," and the reinsurer assuming those risks is known as the "retrocessionaire." Id.

The Participation Agreements and the disputed Quota Share Contract at issue in this matter involve retrocessional agreements.

*Arbitration Clause in Quota Share Contract*

It is well-established that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Thus, the issue of whether parties have agreed to arbitrate a dispute is a matter for courts to decide. See Sphere-Drake Ins. Ltd. v. All

4

Amer. Ins. Co., 256 F.3d 587, 589-90 (7th Cir. 2001) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-45 (1995)). Whether an agreement to arbitrate exists is determined under principles of state law. See Tinder v. Pinkerton Security, 305 F.3d 728, 733 (7th Cir. 2002); see also 9 U.S.C. § 2. Even in the absence of a party's express agreement to arbitrate, a party may be deemed to have agreed to arbitrate where his agent acted with the apparent authority to do so. See Reinsurance Co. of Amer. v. Amer. Cent. Ins. Co., 621 F. Supp. 516, 518 (C.D. Ill. 1985).

Under Illinois law, it is a well-established precept of agency law that a principal will be bound by the authority he appears to give to another, as well as that authority which he actually gives. State Sec. Ins. Co. v. Burgos, 145 Ill.2d 423, 431; 583 N.E.2d 547, 551 (Ill. 1991). Apparent authority arises where a principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts. Id. Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. Id. The principal, having created the appearance of authority, is estopped to deny it to the detriment of a third party. Id.

According to ANICO, all members of the AAHRU pool allowed IOA Re to manage their affairs relating to reinsurance contracts. ANICO argues that it never received notice that CCC attempted to revoke IOA Re's authority to enter contracts on CCC's behalf. ANICO also argues that, assuming the attempted revocation of authority was permissible under the Participation Agreement, the Participation Agreements required CCC to give notice to other AAHRU pool members, and no such notice was ever given. Thus, by entering the Quota Share Contract with IOA Re, ANICO reasonably relied upon IOA Re's apparent authority to do so.

Under the Participation Agreement, CCC gave IOA Re authority to enter contracts on its

5

behalf. The Participation Agreement executed between CCC and IOA Re was identical or substantially identical to other such agreements executed by all other members of the AAHRU pool. Without notice to the contrary, ANICO reasonably relied on the fact that IOA Re was simply carrying out its authority among members of the AAHRU pool. See Burgos, 145 Ill.2d at 431; 583 N.E.2d at 551; Reinsurance Co., 621 F. Supp. at 520.

CCC offers no evidence to the contrary. CCC simply argues that IOA Re's apparent authority is a fact issue requiring discovery and a trial according to Sphere-Drake. However, Sphere-Drake is inapplicable to the issue of whether IOA Re had apparent authority to bind CCC to the Quota Share Contract, as that case specifically stated that the plaintiff therein contended that the defendant knew that the plaintiff's agent had exceeded its authority. Thus, this matter is governed by the analysis in Reinsurance Co. of Amer. v. Amer. Cent. Ins. Co., and as indicated, the court finds that, as a matter or law, IOA Re had the apparent authority to bind CCC to the Quota Share Contract.

*Arbitration Clause in Participation Agreement*

Additionally, ANICO argues that arbitration is required pursuant to the Participation Agreement that CCC, as a member of AAHRU, and IOA Re executed.

The Federal Arbitration Act embodies a clear federal policy favoring arbitration agreements. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Generally, "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

The breadth of the arbitration clause in the Participation Agreement encompasses the parties'

6

current dispute. The clause provides that "any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire . . . ." Def.'s Reply, Ex. A (Participation Agreement, Article XIII, ¶ 1). The clause also contemplates situations where arbitration may occur between multiple members of the AAHRU pool. See Def.'s Reply, Ex. A (Participation Agreement, Article XIII, ¶ 7).

The disputed Quota Share Contract finds its genesis in the Participation Agreement executed between CCC, as a member of AAHRU, and IOA Re. The arbitration clause in the Participation Agreement is identical or substantially similar to the Participation Agreement executed by all members of the AAHRU pool. Thus, neither CCC nor ANICO is a stranger to the arbitration clauses in the Participation Agreements. While ANICO is arguably not a signed party to the Participation Agreement executed by CCC and IOA Re, ANICO is a fellow AAHRU member and at the very least a third-party beneficiary to the Participation Agreement, and may enforce the arbitration clause contained therein. See Ross Bros. Constr. Co. v. Int'l. Steel Services, Inc., 283 F.3d 867, 876 (7th Cir. 2002).

So, while CCC attempts to limit its dispute to the discreet issue of the Quota Share Contract, that dispute arises out of the Participation Agreement and is subject to arbitration according to its terms. In seeking an equitable remedy, CCC cannot artfully plead a complaint in an attempt to have the court and the parties put on blinders to the reality of the relationship contemplated by the AAHRU pool, and defeat the expectations of the AAHRU members as indicated in their respective, and identical or substantially identical, Participation Agreements.

If the AAHRU members had wished to limit the scope of the arbitration clauses of the Participation Agreements they could have done so. However, CCC shows no limitations or

7

exceptions to the broad language covering "any dispute" in the arbitration clause that would delimit the breadth of issues required to be arbitrated. Those arbitration clauses are broad, and applying the policy of the FAA, the court is to give such clauses their effect - especially in light of the strong policies favoring arbitration created by Congress, the Supreme Court and the Seventh Circuit.

## IV. CONCLUSION

For the foregoing reasons, under either the Quota Share Contract or the Participation Agreement, a valid arbitration agreement exists; however, in either case, the forum for arbitration is not in the Northern District of Illinois. As such, this court cannot enter an order compelling arbitration in another forum, and may only dismiss or stay the matter. See Snyder v. Smith, 736 F.2d 409, 420 (7th Cir. 1984) *overruled on other grounds by* Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998); Merrill Lynch, Pierce, Fenner & Smith v. Lauer, 49 F.3d 323, 328 (7th Cir. 1995). Therefore, ANICO's Motion to Dismiss is granted and this action is dismissed.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 2-10-04